IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HIREN PATEL, <br><br> Plaintiff, <br><br> v. <br><br> SHARON K. SMITH, NICOLE JOHNSON, and SJ SUBS, LLC, <br><br> Defendants. | Civil Action <br><br> No.  10-4165 |

July 11, 2011

**MEMORANDUM**

      This is a diversity and federal question action brought by plaintiff Hiren Patel. Patel alleges that defendants Sharon Smith, Nicole Johnson, and SJ Subs, LLC defrauded him of $300,000.  Patel further alleges that the defendants induced him to buy Subway franchises and then tortiously interfered with his re-sale of those franchises.  In total, Patel brings seven causes of action.  Defendants have moved to dismiss Patel's claims for lack of jurisdiction and, alternatively, for failure to state a claim.

**I. Background**[1]

      Subway sandwich shops are franchised through Development Agents ("Subway

---

[1] The factual background is taken from the allegations contained in Patel's complaint.  All allegations are accepted as true, and all reasonable inferences are drawn in favor of the plaintiff.  *See Keystone Redev. Partners v. Decker*, 631 F.3d 89, 95 (3d Cir. 2011).

Agents"), which act as Subway's regional representatives. This case concerns Hiren Patel's unsuccessful efforts to become a Subway Agent in southern New Jersey.

In January and February 2008, defendants Sharon Smith and Nicole Johnson told Patel that they would be interested in selling him some of their Subway holdings and their position as Subway Agents. Patel, Smith, and Johnson met in Las Vegas on May 19, 2008 to arrange the sale. Patel examined Smith and Johnson's Subway Agent contract, but Smith told Patel that the content of the contract did not matter because Patel would enter into his own contract with Subway if Subway approved the transfer of the position to Patel.[2] Smith also encouraged Patel to increase his chances of being approved as a Subway Agent for southern New Jersey by purchasing Subway franchise locations in the area. Patel then verbally agreed to purchase from Smith and Johnson: (1) the position of Subway Agent for southern New Jersey for $1.3 million; (2) two franchise locations in southern New Jersey for a total of $400,000; and (3) a 1/3 interest in SJ Subs, LLC, which owned other franchises in southern New Jersey, for $200,000.

On May 28, 2008, Patel, Smith, and Johnson executed the sales. Patel signed three agreements: first, a purchase agreement for the Subway Agent position that included a $100,000 deposit; second, an amendment to the first agreement making the deposit refundable if Patel were not approved as a Subway Agent for southern New Jersey; and

---

[2] Presumably the Subway Agent position is transferable, but only with Subway's approval.

third, a purchase agreement for the interest in SJ Subs.[3] After the meeting, Patel wired $700,000 to Smith and Johnson: a $100,000 deposit toward the Subway Agent position; $400,000 for the two Subway franchise locations; and $200,000 for the interest in SJ Subs. Patel took ownership of the two Subway locations soon after, but did not receive any written evidence of, or cash distribution from, his interest in SJ Subs.

In August 2008, Smith, and now Johnson, encouraged Patel to purchase additional Subway franchises in southern New Jersey. Patel "and/or his affiliates" subsequently purchased six locations for a total purchase price of $957,000. Compl. at ¶ 30.

In early September 2008, Smith called Patel to tell him that "it would be desirable to enter into a replacement contract" for the Subway Agent position that increased the purchase price by $200,000. Compl. at ¶ 31. The new contract also called for a $300,000 deposit, but Smith told Patel that he would not have to pay the additional deposit because the "extra $200,000 would correspond to the $200,000 already paid by Patel" for the interest in SJ Subs.[4] Compl. at ¶ 33. On September 5, 2008, Patel, Smith, and Johnson

---

[3] Only two of the three proposed transactions are accounted for: there is no mention in the complaint of an executed agreement concerning the two franchise locations in southern New Jersey which had been discussed at the meeting on May 19, 2008. Given that the locations were later transferred to Patel, this inconsistency appears to be an inadvertent omission.

[4] It is not clear from the complaint whether this agreement either: (a) extinguished Patel's interest in SJ Subs and shifted the $200,000 originally paid for SJ Subs to the Subway Agent deposit; or (b) meant that the additional deposit requirement was waived on account of Patel's previous purchase. Because one of Patel's central allegations concerns the undelivered interest in SJ Subs, the court assumes the latter.

executed the replacement contract.  Smith assured Patel that the only change in the replacement contract was the increased purchase price and deposit, but in fact there were other differences, including that the $300,000 deposit was now non-refundable.

Later that month, Smith told Patel that Subway had not approved him as a Subway Agent.  Patel then attempted to sell the Subway franchises he owned in southern New Jersey, but Smith and Johnson allegedly frustrated his efforts to do so by: (1) imposing conditions that made the transactions difficult to consummate; (2) telling potential buyers that the sale price was too high; and (3) making negative comments to potential buyers about the franchise locations.  Patel was only able to sell one location, and he incurred a $25,000 loss on that sale.

On August 18, 2010, Patel filed a civil complaint in this court bringing seven claims: (1) restraint of trade; (2) conversion; (3) fraud; (4) civil conspiracy; (5) civil racketeering; (6) securities fraud; and (7) tortious interference with business relations.  Patel argues that the defendants defrauded him of $300,000 and received further financial gains from his purchase and re-sale of Subway locations.

## II. Discussion

Patel invokes this court's jurisdiction on two grounds: diversity of citizenship, 28 U.S.C. § 1332(a), and federal question, 28 U.S.C. §1331.  Both bases are discussed below.

A.      Diversity of Citizenship

The complaint states that two defendants, Smith and Johnson, have "a principal place of business" in New Jersey, but it says nothing about their permanent home. This pleading is insufficient to establish federal diversity jurisdiction, *see Chemical Leaman Tank Lines v. Aetna Cas. and Sur. Co.*, 177 F.3d 210, 222 n.13 (3d Cir. 1999) (noting that "the plaintiff must state all parties' citizenships such that the existence of complete diversity can be confirmed"), and Patel will be given leave to amend his complaint for the purpose of establishing diversity, *see* 28 U.S.C. § 1653 ("Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts.").

B.      Federal Question

Though Patel has not sufficiently pled diversity, this court may still have jurisdiction under 28 U.S.C. § 1331. Three of Patel's claims arise under federal law: (1) a violation of federal antitrust law; (2) a violation of federal racketeering law; and (3) a violation of federal securities fraud law. *See* Compl. at ¶¶ 60–100. The remainder of his claims arise under state law.

   1.   Standard of Review for a 12(b)(6) Motion

Rule 8 requires that a complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Facts

alleged in the complaint must be taken as true, *see Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008), but this presumption is "inapplicable to legal conclusions," *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949–50 (2009). To survive a motion to dismiss, the factual allegations in the complaint must "plausibly give rise to an entitlement to relief." *Id.* at 1950. Furthermore, all reasonable inferences must be drawn in favor of the plaintiff. *See Keystone Redev. Partners v. Decker*, 631 F.3d 89, 95 (3d Cir. 2011). With this general 12(b)(6) standard in mind, the court turns to the three federal claims.

2. Antitrust Claim[5]

A restraint of trade in violation of Section 1 of the Sherman Act has four elements: "(1) concerted action by the defendants; (2) that produced anti-competitive effects within the relevant product and geographic markets; (3) that the concerted actions were illegal; and (4) that [the plaintiff] was injured as a proximate result of the concerted action." *Gordon v. Lewistown Hosp.*, 423 F.3d 184, 207 (3d Cir. 2005) (citations omitted). With regard to the second element, the plaintiff has "the burden of defining the relevant market." *Queen City Pizza v. Domino's Pizza*, 124 F.3d 430, 436 (3d Cir. 1997) (citations omitted). "Where the plaintiff fails to define its proposed relevant market with

---

[5] Plaintiff's complaint states that defendants' actions constitute "a restraint of trade or commerce by Patel [sic] in violation of 1 [sic] U.S.C. § 1 et seq." Compl. at ¶ 61. Plaintiff explains in his memorandum in opposition to the motion to dismiss that the Sherman Act was mistakenly "referred to in the [c]omplaint as 1 U.S.C. § 1 et seq" instead of "15 U.S.C. § 1 et seq." Pl.'s Resp. at 3 (Docket No. 6). Because "[p]leadings must be construed so as to do justice," these typographical mistakes are disregarded. Fed. R. Civ. P. 8(e).

reference to the rule of reasonable interchangeability and cross-elasticity of demand . . . , the relevant market is legally insufficient and a motion to dismiss may be granted." *Id*. (collecting cases).[6]

In this case Patel has failed to allege a relevant market at all. It may be, as Patel alleges, that defendants "us[ed] the power of their position" to harm him, but this behavior alone is not an antitrust violation. Pl.'s Resp. at 6 (Docket No. 6). Federal antitrust laws "do not create a federal law of unfair competition or purport to afford remedies for all torts committed by or against persons engaged in interstate commerce." *Brooke Group v. Brown & Williamson Tobacco*, 509 U.S. 209, 225 (1993) (internal quotation marks omitted). Because Patel has failed to allege an antitrust violation, this claim will be dismissed.

---

[6] The phrases "reasonable interchangeability" and "cross-elasticity of demand" refer to methods of defining the product market where anti-competitive effects are alleged to have occurred. The Third Circuit has summarized these methods as follows:

> The relevant product market is defined as those commodities reasonably interchangeable by consumers for the same purposes. Factors to be considered include price, use and qualities. Accordingly, the products in a relevant product market would be characterized by a cross-elasticity of demand, in other words, the rise in the price of a good within a relevant product market would tend to create a greater demand for other like goods in that market.

*Tunis Bros. Co. v. Ford Motor Co.*, 952 F.2d 715, 722 (3d Cir. 1991) (internal quotation marks and citations omitted).

3. Racketeering Claim

A *prima facie* violation of 18 U.S.C. § 1962(c) (civil racketeering) is established when a plaintiff alleges, "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985) (footnote omitted).[7] Plaintiffs must allege all four elements to survive a motion to dismiss. *Id.*

Racketeering activities include, *inter alia*, mail fraud and wire fraud. *See* 18 U.S.C. §§ 1341, 1343. Patel alleges that the defendants engaged in both acts. Compl. at ¶ 84. The federal wire fraud statute prohibits "any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises . . . [that involves the use of] wire, television or radio communications." 18 U.S.C. § 1343. The federal mail fraud statute prohibits the same using a mail carrier. 18 U.S.C. § 1341.

A "pattern" of racketeering activity is defined as requiring "at least two acts of racketeering activity" within a ten-year period. 18 U.S.C. § 1961(5). A plaintiff must show that the "'racketeering [activities] are related, *and* that they amount to or pose a threat of *continued* criminal activity.'" *Tabas v. Tabas*, 47 F.3d 1280, 1292 (3d Cir. 1995) (second emphasis added) (quoting *H.J. Inc. v. Nw. Bell Tel.*, 492 U.S. 229, 239

---

[7] A private civil remedy for a violation of 18 U.S.C. § 1962 is expressly granted by 18 U.S.C. § 1964(c) ("Any person injured . . . by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court . . . .").

8

(1989)). The continuity requirement is satisfied by alleging "'past conduct that by its nature projects into the future with a threat of repetition,'" or, alternatively, a "'closed period of repeated conduct,'" *Tabas*, 47 F.3d at 1292 (quoting *H.J. Inc.*, 492 U.S. at 241).

Patel does not allege that defendants' conduct poses a threat of future repetition. Furthermore, even drawing all reasonable inferences in favor of the plaintiff, the court finds that the defendants' alleged conduct does not inherently pose such a threat: the alleged acts of racketeering concerned a single series of transactions—the sale of Subway assets to Patel—and a single victim. As a result, Patel must plead a "closed period of repeated conduct" by alleging "a series of related predicates extending over a *substantial* period of time." *Tabas*, 47 F.3d at 1292 (quoting *H.J.*, 492 U.S. at 242).

The Third Circuit has not defined a "substantial period of time," but has held that "[r]elated predicate acts lasting 'a few weeks or months and threatening no future criminal conduct do not satisfy this requirement.'" *Hindes v. Castle*, 937 F.2d 868, 872 (3d Cir. 1991) (quoting *H.J. Inc.,* 492 U.S. at 242)*; see also Kehr Packages, Inc. v. Fidelcor Inc.*, 926 F.2d 1406, 1418 (3d Cir. 1991) (holding that an "eight-month period of fraudulent activity directed at a single entity does not constitute a pattern, absent a threat of future criminal acts"); *Cooper v. Broadspire Services*, No. 04-5289, 2005 WL 1712390, *10 (E.D. Pa. July 20, 2005) ("Plaintiff alleges a series of events over a four month period; this is insufficient to support a closed-ended scheme.").

Patel references two instances of fraudulent conduct that allegedly constitute

9

racketeering activities: (1) on May 28, 2008, Smith and Johnson sold Patel an interest in SJ Subs and never delivered that interest; and (2) in early September, 2008, Smith told Patel that the revised contract for the sale of the Subway Agent position was identical to the original in every respect except for the increased purchase price and deposit, even though there were other material differences.[8]  In short, these two acts occurred over the course of a few months and did not threaten future criminal conduct.  Under *Hindes*, Patel has not adequately pled the continuity requirement of civil racketeering; because Patel has failed to allege this element, the civil racketeering claim will be dismissed without prejudice.  *See, e.g.*, *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (stating that a complaint must have "'enough factual matter (taken as true) to suggest' [each] required element" of the claim alleged (quoting *Twombly*, 550 U.S. at 545)).

    4.    <u>"Securities Fraud" Claim</u>

Patel alleges that defendants committed "securities fraud" by violating 18 U.S.C. § 1343 (fraud by wire) when they sold membership interests in SJ Subs "without disclosing to Patel all of the information and risk factors."[9]  Compl. at ¶ 91.  The federal

---

[8] Patel does not allege that anything else the defendants did constituted an instance of "false or fraudulent pretenses, representations, or promises."  18 U.S.C. §§ 1341, 1343.

[9] Patel also cites 15 U.S.C. § 771 (describing the Comptroller General's supervision of the Federal Energy Administration) and 70 P.S. § 1-401 (Pennsylvania fraud provision).  Compl. at ¶ 92.  Even correcting the first citation to 15 U.S.C. § 77b(1) (defining "security"), neither statute creates a federal private right of action.

wire fraud statute is part of the criminal code. The statute contains no express private right of action, and judicial recognition of an implied right of action is generally discouraged. *Sosa v. Alvarez-Machain*, 542 U.S. 692, 725–27 (2004) ("[T]his Court has recently and repeatedly said that a decision to create a private right of action is one better left to legislative judgment in the great majority of cases."). District courts in this circuit have not recognized an implied private right of action for violations of 18 U.S.C. § 1343, *see Jones v. Lockett*, No. 08-16, 2009 WL 2232812 (W.D. Pa. July 23, 2009), *Kovalev v. City of Philadelphia*, No. 07-4875, 2008 WL 5377625 (E.D. Pa. Dec. 23, 2008), *Fleishman v. Scilley*, No. 03-4639, 2004 WL 2203746 (E.D. Pa. Sept. 30, 2004), and neither have the other circuits that have confronted the issue, *see Wisdom v. First Midwest Bank*, 167 F.3d 402, 408–09 (8th Cir. 1999), *Morganroth & Morganroth v. DeLorean*, 123 F.3d 374, 386 (6th Cir. 1997), *Napper v. Anderson, Henley, Shields, Bradford & Pritchard*, 500 F.2d 634, 636 (5th Cir. 1974). After a close reading of the statute, the court agrees with the cited authorities and does not recognize a private right of action under § 1343. Accordingly, this court will dismiss Patel's wire fraud claim with prejudice. *See Cowell v. Palmer Twp.*, 263 F.3d 286, 296 (3d Cir. 2001) ( "[L]eave to amend need not be granted when amending the complaint would clearly be futile.").

    5.    <u>State Law Claims</u>

Patel urges this court to exercise supplemental jurisdiction over his four state law claims because they arise from the same nucleus of operative facts. Because Patel's

federal claims will be dismissed, this court declines to exercise jurisdiction over Patel's state law claims. *See* 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . [if] the district court has dismissed all claims over which it has original jurisdiction[.]").

### III. Conclusion

Patel invokes this court's jurisdiction on diversity of citizenship and federal question grounds. For the foregoing reasons, he has failed to properly plead either ground. Pursuant to 28 U.S.C. § 1653, Patel will be given 15 days to amend his complaint to allege the presence of diversity. An appropriate order accompanies this memorandum.